419 So.2d 829 (1982)
Johnny HAMMOND
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK.
No. 82-C-0326.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
Louis D. Bufkin, McHale, Bufkin & Dees, Lake Charles, for applicant.
John S. Bradford, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for respondents.
*830 DIXON, Chief Justice.
We granted writs in this case to review the holding of the courts below that relator's "... present disability is not causally related to the employment accident he suffered on June 8, 1979." Hammond v. Fidelity & Casualty Co. of New York, 407 So.2d 13, 14 (La.App.1981). Both courts found that plaintiff's disability was caused by the operation to remove a cancerous tumor (which was discovered after an on-the-job accident) and not by the work related accident.
On June 8, 1979, while driving a truck performing his duties on the job, plaintiff seriously bruised his upper left arm in the spokes of the steering wheel of the truck when a front wheel dropped in a hole. After work he went to the hospital because of the pain and swelling; the injury was diagnosed as a suspected hematoma (a tumor or swelling containing blood, Merriam-Webster's Third New International Dictionary). Hammond was released and told to apply ice to the affected area.
Plaintiff returned to work for Morgan Crop Service the next day in spite of the pain and swelling he was experiencing. He remained in their employ until he left to go to work for Glasscock Drilling, for higher wages, near the end of the summer, despite the continual swelling and pain in his upper left arm, and the gradual loss of strength he testified he experienced.
Although the swelling of the arm subsided some within the first week after the accident, it began to swell again and did not thereafter subside. In August of 1979 plaintiff was forced to discontinue his employment with the drilling company because of the continued swelling, pain and loss of strength in his left arm. The testimony of the plaintiff and his wife establish that prior to the work related accident plaintiff had had no indication of any diseased condition in his arm; it appeared to be as normal as his right arm. There had been no weakness, no swelling and no manifestation of anything abnormal in the upper left arm.
After termination of his employment, the plaintiff consulted Dr. Gunderson, an orthopedic surgeon, upon the recommendation of Memorial Hospital, in August of 1979. Dr. Gunderson admitted plaintiff to the hospital and performed a biopsy on the swollen mass on September 14, 1979. Dr. Gunderson consulted with Dr. Gore, a cancer specialist (an internist with a subspeciality in cancer medicine or oncology). Dr. Gore physically examined the mass on the plaintiff's upper left arm and determined that the plaintiff had a malignant cancerous growth in his upper left arm; the pathologist's report on the biopsy confirmed this determination by finding that the neoplasm was a sarcoma (a malignant new growth or tumor of connective tissues).[1] Dr. Gunderson then referred plaintiff to Dr. Romsdahl, a general surgeon who does musculoskeletal tumor work at M. D. Anderson Hospital in Houston, Texas. The biopsy specimen was examined and found to be a sclerosing neoplasm (a new growth forming scar tissue or fibrous tissue). On October 10, 1979, Dr. Romsdahl removed the tumor and the surrounding muscle by making a wide excision. The histological classification of the tumor after its removal was that it was an undifferentiated sarcoma; meaning a sarcoma whose tissue origin cannot be identified or is unknown. After the operation the plaintiff received cobalt therapy at M. D. Anderson Hospital, and he presently continues this cobalt therapy at St. Patrick's Hospital in Lake Charles.
*831 Because of the tumor and the necessity for its removal, the plaintiff is disabled. He suffers continual pain in his upper left arm and he has lost substantially all strength in that arm. Therefore he can no longer perform the type of manual labor he was able to do prior to the work related accident. Plaintiff has only a sixth grade education.
Under our workmen's compensation statute, the plaintiff-employee is entitled to benefits if he "... receives personal injury by accident arising out of and in the course of his employment ..." R.S. 23:1031. Both the trial court and the court of appeal held that the total and permanent disability suffered by the plaintiff was not causally connected to the employment accident; that the medical evidence indicated that the trauma did not cause the cancerous mass and that the medical evidence was sufficient to rebut the presumption in favor of the plaintiff.
The plaintiff-employee in a workmen's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591, 595 (La.1977). "... Furthermore, medical testimony `must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability' ..." Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982).
A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at 1236; Lindsey v. H. A. Lott, Inc., 387 So.2d 1091, 1092 (La.1980); Lucas v. Insurance Company of North America, supra at 596; Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 1146, 221 So.2d 816, 827-28 (1969). This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corp., supra at 1236.
As the facts related above illustrate, the plaintiff did not suffer from any apparent disabilities or abnormalities in his upper left arm until he experienced the mechanical trauma to that portion of his left arm. Almost immediately after the trauma the plaintiff began experiencing the symptoms of swelling and pain in the same region of his upper left arm where he had sustained the mechanical trauma. Although the symptom of swelling subsided within the first week, it did not totally disappear and it continuously manifested itself until the swollen mass was removed by the wide excision. The plaintiff continues to suffer from an aching pain in this area. Additionally, the evidence, both medical and nonmedical, shows that there is a reasonable possibility of causal connection. Specifically, Dr. Gore, the oncologist, in a letter[2] and in his testimony[3] indicated *832 that there was a possibility that the trauma caused the tumor to hemorrhage internally resulting in a manifestation of the tumor not previously experienced. He felt that the tumor was preexisting, but was sub-clinical (not perceivable by a layman or a doctor upon physical examination) prior to the trauma. The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee's disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident. Allor v. Belden Corp., supra at 1236; Johnson v. The Travelers Insurance Co., 284 So.2d 888, 891 (La.1973); Behan v. John B. Honor Co., 143 La. 348, 351, 78 So. 589, 590 (1917). The sequence of events and Dr. Gore's letter and testimony establish a reasonable possibility of causal connection between the accident and the disabling condition.
The lower courts based their decisions upon the assertions of Dr. Gunderson, Dr. Gore and Dr. Romsdahl that in their opinion a trauma could not cause a tumor and that trauma would have no effect upon the eventual progression of the disease. The lower courts believed that the medical evidence was sufficient to deny compensation. They failed to distinguish the "medical" meaning of cause from the "legal" meaning of cause.[4] When the doctors speak *833 of cause they are essentially speaking of etiologythe origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff's disability by making manifest symptoms previously unnoticed. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton v. Fireman's Fund American Insurance Companies, 355 So.2d 927, 928 (La.1978).
Furthermore, "[i]t is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor...." Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La. 1976). See Allor v. Belden Corp., supra at 1237; Bertrand v. Coal Operators Casualty Co., supra.
As in Haughton v. Fireman's Fund, supra, there is no separate, intervening cause of the worker's disability in this case. Haughton stumbled, fell and broke his thigh; it was discovered that his recovery was complicated by the existence of multiple myeloma. Here, Hammond's arm became swollen and painful immediately after the trauma at exactly the location of the tumor, which was surgically removed along with the surrounding muscle tissue. In the three and one-half months following the accident, Hammond's arm became progressively worse. The only "intervention" was the apparent activation, commencing immediately after the trauma, of the preexisting tumor. The accident might not have caused the sarcoma any more than Haughton's fall caused his myeloma, but in neither case did the defendant establish that the accident did not cause the disability. To the contrary, the record in this case is clear that Hammond is entitled to compensation benefits "[f]or injury producing permanent total disability ..." R.S. 23:1221(2).
The plaintiff is not, however, entitled to penalties and attorney fees because the termination of the benefits by the insurer was not arbitrary and capricious. The nature of the required causal effect between the accident and the disability is even now subject to considerable litigation. See Adams v. New Orleans Public Service Inc., 418 So.2d 485 (La.1982); Guillory v. United States Fidelity & Guaranty Insurance Co., 420 So.2d 119 (La.1982); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982) (No. 81-C-3116). The insurer with justification could rely upon the opinions of the three doctors that the accident did not cause the cancer, and, therefore, did not cause the disability.
The judgments of the trial court and the court of appeal are reversed. There is now judgment in favor of the plaintiff and against the defendant, Fidelity & Casualty Company of New York, for total and permanent disability in the amount of $141.00 per week for the extent of the disability, all at the defendant's cost.
MARCUS, BLANCHE and LEMMON, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
Plaintiff-employee in a workers' compensation case must prove by a preponderance of the evidence (more probable than not) that an accidential injury caused his or her present disability. Clearly, Hammond is presently disabled as a result of the removal of a malignant tumor and surrounding muscle from his left arm. However, I do not believe that he proved that his disability is causally connected to the employment accident. *834 In other words, the trauma did not cause the cancerous mass or the need for its removal. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
The plaintiff in a workmen's compensation case must prove there is a causal connection between the disability and the employment accident. Three doctors testified in the present case that there was no causal connection between the employee's accident and the cancer which resulted in his disability.
Dr. Clark Gunderson is an orthopedic surgeon who examined Mr. Hammond's arm on approximately twenty different occasions. He performed a biopsy of the tumor which was found in the plaintiff's upper arm. In his deposition, Dr. Gunderson stated:
"Q. Doctor, did you have an opinion as to whether or not the tumor was caused by a job-related accident?
A. Yes, I didn't feel it did, that it was caused by a job-related accident." TR p. 33.
A few minutes later, in the same deposition, Dr. Gunderson was again questioned as to causation:
"Q. And so, the disability would not be related to the job-related accident that he described?
No." TR p. 34
In a letter received into evidence, Dr. Marvin Romsdahl gave his opinion as to the cause of the plaintiff's disability. Dr. Romsdahl excised the cancer in Mr. Hammond's arm.
"In evaluating events relating to the development of this neoplasm, it is not my opinion that the tumor mass was caused by, or rendered more malignant, by any trauma which the patient may have sustained at a previous time. It is my opinion that the trauma incident, in June 1979, as described by Mr. Hammond was incidental in regard to the basic disease process. It is unfortunate that such an accident may have focused attention away from the specific nature of this problem. However, it is not appropriate to assume an association between the actual trauma incident and development of the neoplasm." TR p. 40
The only shred of evidence which links the work accident with the defendant's disability is a sentence in a letter written by Dr. Stanley Gore.
"It is my opinion, however, that the process could have first become manifest by an intra-tumoral hemorrage as a consequence of the trauma." TR p. 26
At trial both attorneys and the court questioned Dr. Gore as to this statement. On one such occasion, Dr. Gore explained,
"The trauma may have caused hemorrhage which would have created a mass effect within the arm. A physician, if he were consulted at that time, would appreciate that mass and have the history of trauma and might wish just to observe that and see if it resolved. If the swelling, et cetera, resolved, then the obvious conclusion would be that this were a hematoma or a hemorrhage which was reabsorbed into the tissues, into the blood, and, if it did not, the swelling did not go down and the mass effect in the arm did not go away in a set period of time, you decide how long you were going to observe this, then perhaps further investigation of that would have been indicated at that time.
Q. But just so I can understand it, you said that the hemorrhage would have no effect whatsoever in the cancer problem
A. No.
Q. in this man.
A. No." TR pgs. 113-114.
Dr. Gore, in using the term "manifestation" in his letter, was simply stating that the trauma would have focused a doctor's attention on Mr. Hammond's upper arm. This additional attention may have led to an early discovery of the tumor. Dr. Gore denied that the cancer was caused or was aggravated by the work-related accident.
Allor v. Belden Corp., 393 So.2d 1233 (La. 1981) does provide a presumption in favor of the employee who is in good health before *835 the accident, but only when "... there is a reasonable possibility of causal connection between the accident and the disabling condition." I find no evidence of a causal connection.
LEMMON, Justice, dissenting.
Plaintiff had a cancerous tumor in his arm prior to the accident. The accident did not cause or aggravate the tumor, according to the medical testimony. The accident caused the arm to swell (possibly because of intratumoral hemorrhage), but the swelling from the accident soon subsided. Later, the arm again became swollen, but the medical experts did not relate that swelling back to the accident. They looked for and found another cause, the cancer which preexisted the accident. Because of that cancer (and not because of the accident), surgery was required, resulting in disability.
The accident did not cause the disability. I would affirm the judgments below.
NOTES
[1] Sarcoma: A tumor, usually highly malignant, formed by proliferation of mesodermal cells; a malignant connective tissue neoplasm.

Mesodermal: Origin of all connective tissues (blood, musculature, etc.); middle of three primary germ layers of embryo.
Neoplasm: New growth; an abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the new growth cease. Neoplasms show partial or complete lack of structural organization and functional coordination with the normal tissue; they usually form a distinct mass of tissue. Synonym: Tumor (any swelling). Stedman's Medical Dictionary (4th Unabridged Lawyer's Edition 1976).
[2] "It is my opinion, however, that the process could have first become manifest by an intra-tumoral hemorrhage as a consequence of trauma." Letter marked P-5.
[3] The following exchange took place between plaintiff's counsel and Dr. Gore:

"Q Dr. Gore, it is my impression that it is the consensus of opinions of people who deal with malignant neoplasms that they are not, to use the term caused, by trauma, is that correct?
A There are some several exceptions to that, but there has never really been any documentation that trauma is a direct etiological factor in malignant neoplasm, but there is suggestive evidence in some forms.
Q Now, I'm referring to your report to me dated May 7, 1980, in which you discuss what you just said, that there was no etiological known medical etiological nexus, but did you not also add that this tumor was present on June 8, 1979, but was sub-clinical?
A Yes, I stated that.
Q What does that mean exactly?sub-clinical.
A It means that it would not have been evidence by physical examination. The tumor had not brought forth symptoms.
Q And you went on to say:
`That is, the tumor was not appreciated by the patient and possibly could not have been detected by physical examination.'
You added:
`Of course, this is pure speculation.'
How about if we filled in that speculation with facts established on the trial of this case, that he had not ever felt anything over there, he had never had any abnormal feeling, no weakness, no swelling, and then suddenly as a result of having his arm thrust through a steering wheel and the back portion of that arm hit on that date, and he subsequently developed pain, swelling, et cetera, would that not give a basis for the conclusion as you expressed that your opinion was that the process could have first become manifest by an intra-tumoral hemorrhage as a consequence of trauma?
A It's possible.
Q Now, when one says that there is no known medical etiological nexus between a malignant neoplasm and trauma that that does not contradict this conclusion?
A No.
. . . . . Q Then if you take that set of facts, that is, it swelled on the day of the trauma, the physician prescribed ice to the area and it never thereafter went down until the biopsy or, really, until the surgery, does that not lead it back to what you said about the manifestation as a result of trauma?
A It has to."
[4] "... When the doctor comes before a court or a workmen's compensation commission, he comes prepared to answer questions and give his opinion as a thoroughly trained, qualified expert who is supposed to know whereof he speaks. If, in a cancer case, he says that the cause is unknown, or that trauma is an unlikely cause, he rests his statement not on his own belief alone, but on the beliefs of all his doctor brethren. He probably expects that his position on cause will be respected. Perhaps it will be respected, taken at face value. It is just as likely, however, probably more likely, that the cause which he describes as being unlikely for cancer will nevertheless become, after the lawyer has bandied it about, the cause for legal liability. Though doctor-cause and lawyer-cause may coincide in other types of cases, the likelihood is not great in harms like cancer where the forces of Man and the forces of Nature both contribute to the common end. The doctor has his cause and the lawyer his, and each is different from the other, with the result that the doctor becomes convinced of the lawyer's post hoc addiction. So far as is known, only one doctor was ever very much pleased with lawyer-cause in a cancer case, and his only reason was that he happened to be the successful plaintiff, suffering from a cancer `caused' by a street-car accident.

. . . . . To be sure, the lawyer's formulae contribute little toward finding the source or etiology of a disease, but the doctor must realize that they are not designed for that. The formulae, both proximate cause in tort and occasionment in workmen's compensation, are liability standards; they are used to allocate legal responsibility equitably on the basis of a sufficiency, not a totality, of causal risk. The doctor must realize that a determination of legal responsibility is not the same as finding a pathological cause or source for disease...." Small, Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation. 31 Tex. L.Rev. 630, 657-58 (1953)