YELVERTON, Judge.
This is a suit by the appellant for worker’s compensation benefits based on disability resulting from a ruptured disc. The trial court dismissed the case, finding that the ruptured disc first discovered on February 17, 1981, and surgically removed on August 24, 1981, was not caused by the accident suffered by appellant on the job on September 30, 1980. We reverse and award bene *1281 fits. We find that the trial court’s conclusion regarding causation was clearly wrong.
The accident was not disputed. Nor was the ruptured disc. The focus of attention at the trial was causation and this is the primary issue on appeal. Two other issues, disability and penalties, were not reached by the trial court because of the threshold dismissal. We will decide all three issues on the record before us in the order of (1) causation, (2) disability and (3) penalties and attorney’s fees.
CAUSATION
Appellant, Maria Crocker, 57, was employed as a security guard for Wackenhut Services, Inc., at a strategic petroleum reserve facility near Hackberry, Cameron Parish, Louisiana. On September 30, 1980, while she was exiting the guardhouse, the wind slammed a storm door against her body causing a wound on the back of her right leg. She was seen immediately by Dr. John Colligan in Hackberry and the wound was dressed. The wound became infected and on October 16 she was hospitalized at West Calcasieu-Cameron Hospital in Sul-phur, Louisiana.
Appellant claimed that the accident also injured her back. Her complaints of back pain during the succeeding days were corroborated by two co-employees. But Dr. Colligan said she did not mention a back injury the five times he saw her during the first two weeks following the accident. The accident report prepared by her supervisor also did not mention a back injury.
The first medical confirmation of back complaints occurred when she was hospitalized for the infection in mid-October. She was treated on this occasion by Dr. Walter Ledet, a specialist in the field of general and vascular surgery, and also by Dr. Samuel Jenkins, a general practitioner. Plain X rays revealed only arthritic changes in the lumbar spine. The hospital discharge summary dated three weeks after the accident contained the notation that the patient “continues to complain of back pain.”
Plaintiff was able to return to work on November 17, 1980, and she performed her regular duties until January 10, 1981. On that date she and her co-employees were terminated because of the closing of the employer’s office at Hackberry.
Appellant continued throughout this time to be troubled by both her right leg and her back. On February 9,1981, Dr. Jenkins put her back in the hospital and referred her to Dr. Dennis Walker, an orthopedic surgeon. Dr. Walker first examined her on February 16, 1981. The history was that plaintiff hurt her back when a door caught her in the autumn of 1980. The history included persistent low back pain which recently had begun to radiate down the right leg. Plain X rays, like those taken by Dr. Ledet during the October hospitalization, showed nothing significant, but a myelogram ordered by Dr. Walker on February 17, 1981, revealed a herniated disc at the L4-L5 level. The disc was surgically removed six months later.
Dr. Walker was the only orthopedist in the case and he was plaintiff’s treating physician for the back problem. Testifying by deposition, he said that the symptoms of a herniation initially are not usually as severe as they are later as it progresses. Asked whether an initial complaint of back pain made three weeks after an injury would be consistent with the expected development of a disc, he indicated that it would. He specifically addressed the relationship between the accident and the ruptured disc in the following language:
“. .. As far as the back injury itself is concerned, I feel quite certain, from especially the pathology I found at surgery and from the myelogram that was taken the day I first examined her, that there is a very definite correlation between those two events. In other words, that there was definitely a herniated degenerative disc and that the symptoms that she described to me, which she stated had existed from the time of her twisting injury when she was injured, I think that there was a definite correlation all the way along, chronologically, in that. What I 'am saying is that, if the back pain was more or less considered incidental at the time of her injury, and the leg was the *1282 primary concern, that if the back was not specifically examined, then, until the pain became more severe, then there would be no reason for them to determine causal relationship; if you understand what I mean.”
There was evidence that once in 1979 while being seen by Dr. Jenkins for other problems plaintiff complained of low back pain which the doctor attributed to arthritis. Except for this, the evidence is uncon-tradicted that plaintiff had no problems with her back prior to the accident. There was no evidence that before the accident her ability to work or engage in other activities was impaired or that she complained of pain. Since the accident, however, she experienced increasing pain.
The trial court concluded that plaintiff’s back problem was not related to the accident of September 1980. This conclusion was based primarily on the deposition opinions of Drs. Ledet and Jenkins that appellant’s back condition in October 1980 was simply the result of the aging process. The conclusion was also based in part upon what the trial court regarded as the absence of corroboration of plaintiff’s back complaints during the first two or three weeks following the accident. The trial court also gave some consideration to the evidence of preexisting arthritis.
The findings of the trial court are clearly wrong when measured by the proper legal tests to prove causation. In fairness to the District Court, we note that the instant case was decided on May 26, 1982, which was before the decisions reached in the following cases: Guillory v. United States Fidelity and Guaranty Insurance Company, 420 So.2d 119 (La.1982); Hammond v. Fidelity and Casualty Company of New York, 419 So.2d 829 (La.1982); Martin v. H. B. Zachry Company, 424 So.2d 1002 (La.1982); Urbina v. Alois J. Binder Bakery, Inc., 423 So.2d 765 (La.App. 4th Cir. 1982); and Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3rd Cir.1983).
The cited cases have refined the nature of the required causal effect between the accident and the disability. Based on the principles enunciated by these cases, we reach the following conclusions: Before September 30, 1980, Ms. Crocker was not disabled and suffered no manifestations of back trouble. On that date she suffered a work-related accident when a door slammed into her body. Following the accident she experienced back pain which worsened and resulted in the discovery, four and one-half months later, of a ruptured disc, from which she is presently disabled. Her disability is presumed to have been caused by the accident. In addition, there was positive medical support by the only orthopedist to testify, who was also her treating physician for the back injury, on which to base a finding of causation. To the extent that the facts of this case need the support of a presumption, it has not been rebutted by defendants.
Accordingly, we reverse the trial court and find that plaintiff’s disability was caused by the accident of September 30, 1980.
EXTENT OF DISABILITY
We find that plaintiff established total and permanent disability.
At the time of her accident plaintiff was 57 years old, a widow and a mother of six, and she had only a fourth grade education. She possessed no skills and her prior employment history was limited to three jobs, bagging rice, working as a waitress in a cafe, and working as a CETA employee at the school in Hackberry. She has not worked since her job was discontinued on January 10, 1981. While there was no evidence that she has sought work, it was evident that she was unable to work as of the date of trial. The employer offered no evidence that steady employment was available to her with her limitations in bodily function and educational training and experience.
After Dr. Walker discovered the disc on February 17, 1981, he treated Ms. Crocker conservatively for a while and on March 26, her condition not having improved, he recommended surgery. The patient then was *1283 too frightened to have surgery. On April 20 she again rejected surgery and he ordered a lumbosacral corset for her use. During later visits she continued to suffer from low back pain and sciatica. On August 10 she indicated that she was ready for surgery. This was performed on August 24, 1981, and the disc was removed.
Dr. Walker continued to see Ms. Crocker after the surgery and on November 20, 1981, directed her to return to her activities of daily living but to refrain from certain enumerated activities. On December 18, 1981, her low back pain continuing, Dr. Walker prescribed physical therapy treatment at the West Calcasieu-Cameron Hospital.
He continued to see her in January and February of 1982. She was having persistent low back pain. The last time Dr. Walker saw appellant was on February 26, 1982, and she was still having low back pain, which was aggravated by bending and lifting but the lumbosacral corset helped. Her main persisting problem was the low back pain. The doctor indicated since she was having low back pain post-operatively that condition might well continue for the rest of her life. She cannot do work that requires lifting anything over 20 pounds, nor can she do work that requires repetitive stooping or bending, or sitting or standing for long periods of times. The disability will probably not improve. She will have to continually live with the low back pain.
He assigned a percentage of disability of 20 percent of the body as a whole. This was due in part, he explained, to the continued evidence of pain.
Ms. Crocker testified that at the time of trial she was still suffering from back pain and that some mornings she could hardly get out of bed. The pain was aggravated by sitting or standing for periods of time. She did not believe that she could do a full day’s work as a security guard.
We find that because of the degree of her permanent impairment together with the factor of substantial pain, in combination with the individual factors peculiar to Ms. Croker, she has made out a prima facie case for classification in the odd lot category. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Taintor v. Standard Supply and Hardware, 398 So.2d 1269 (La. App. 4th Cir.1981). We make this finding even though the job she was performing at the time of her accident was a sedentary one, because according to the evidence in the record, standing and sitting for periods of time would aggravate her pain.
We attach no significance to the fact that the reason for the termination of her employment was not because of disability at that time, but because the job itself was discontinued. See Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). Also, the development of her injury was gradual; her back continued to worsen up to the time of the operation.
Accordingly, we find that appellant is entitled to total and permanent disability benefits.
PENALTIES AND ATTORNEY’S FEES
Appellant is not entitled to penalties and attorney’s fees because the termination of benefits was not arbitrary and capricious. Declining to award penalties in Hammond v. Fidelity & Casualty Company of New York, supra, a case involving causation, our Supreme Court explained in a decision handed down September 7, 1982, that “[T]he nature of the required causal effect between the accident and disability is even now subject to considerable litigation.” Termination of benefits by defendants in the instant case occurred long before the Hammond decision.
At the trial the parties stipulated that the plaintiff received “indemnity benefits” in the sum of $4,149.46. We assume part or all of this sum was worker’s compensation benefits but we are unable to determine from the record the total paid or the period covered. For this reason we must remand this case to the trial court for the determination of the sum of benefits paid and when the benefits were terminated.
The judgment of the trial court is reversed. There is now judgment in favor of the plaintiff and against the defendants, *1284 Home Insurance Company and Wackenhut Services, Inc., for total and permanent disability in the amount of $163 per week beginning from the date of termination of benefits, as determined on remand, for the extent of the disability with legal interest on each installment from due date until paid, and for medical expenses in the amount of $6,354.22, all at defendants’ costs.
REVERSED AND REMANDED.