SHORTESS, Judge,
dissenting.
I respectfully dissent.
The real issue involved herein is whether plaintiff’s problems after his laminectomy were causally related to the accident. Our Supreme Court recently commented in Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982):
“A plaintiff-employee’s disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition.” (citations omitted) 419 So.2d at 831 [Emphasis ours]
Prior to this accident, plaintiff was in good health. However, after the accident, plaintiff began to manifest problems in the flank *1097 area, where he fell, and also pain in his back and legs. After closer analysis, it was discovered that he had multiple myeloma and an epidural tumor which was surgically removed by a laminectomy performed on August 22, 1980. There is no question that this particular accident “contributed to the plaintiff’s disability by making manifest [these] symptoms previously unnoticed.” Hammond, supra at 838. Plaintiff showed marked improvement immediately following the surgery, and Aetna felt that the problems related to the flank injury were resolved, and thus discontinued benefits after August 25, 1980.
However, plaintiff’s problems were not resolved. The most pertinent information in this record regarding his condition after surgery was the deposition of Dr. Frederic T. Billings, the cancer specialist who continued treating plaintiff for his problems. Dr. Billings stated that plaintiff’s back pain lessened after the operation in August. He stated that after his radiation treatment in September, he was “really symptom free,” and a report in October stated that plaintiff had “rapid and complete relief of his pain following surgery,” which Billings described as incredible. However, his chronology of plaintiff’s condition after August was as follows:
“And I wrote in my office notes on September 9 — September the 8th, says, ‘Appetite is improving. Pain is better but still present. Now he has pain of the right hip.’ On September 26th, ‘Doing better. Back pain better.’ October 15th, ‘Weight increasing, eating well, feeling better. Postnasal drip. Feels good otherwise. Back pain improved.’ October 22nd, ‘Back pain better.’ November 5th, ‘Feels better.’ December 17th, ‘Pain in back radiating to the left flank. Picked up an acetylene bottle.’ January 21st, ‘Some shortness of breath. No fever or cough.’ And I guess that was following his discharge from the hospital.”
On October 22, plaintiff also began chemotherapy for his myeloma. On December 17, plaintiff complained of pain in his back radiating to the left flank, the area injured in the accident. Plaintiff was again hospitalized in January of 1981 for pneumonia, which patients suffering from multiple myeloma are prone to contract. In April of 1981, plaintiff was hospitalized for increasing pain at the upper end of his laminecto-my scar, and from this point his back problems never substantially subsided before the date of his death.
Dr. Billings stated that his “bottom line” was that he did not feel the fall exacerbated the tumor, but that it clouded the diagnosis of plaintiff’s problems. He further admitted that the kidney stones, myeloma, or the tumor could have independently caused the back pain, or a combination of all three, plus the fall; that plaintiff’s back hurt more after the fall; that the fall was more incidental than the diagnosis; that he did not think the fall exacerbated the tumor, but it could have; and that any of plaintiff’s conditions could have been exacerbated by trauma and gone undiagnosed until trauma. Billings stated that he felt the reason for the persistent pain after the surgery was the epidural carcinoma and that the January and April hospital stays were not related to the accident. However, he also commented, “it’s hard to know whether or not he would be where he’d be if only the fall were the problem.”
The Supreme Court stated in Hammond, supra:
“When the doctors speak of cause they are essentially speaking of etiology — the origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff’s disability by making manifest symptoms previously unnoticed. ‘Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.’ Haughton v. Fireman’s Fund American Insurance Companies, 355 So.2d 927, 928 (La.1978).
“Furthermore, ‘[i]t is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which *1098 meets the standards of accidental injury is a disabling factor . . .. ’ Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La.1976). See Allor v. Belden Corp., supra [393 So.2d 1233] at 1237 [La.1981]; Bertrand v. Coal Operators Casualty Co., supra.” 419 So.2d at 832-833.
Plaintiff was a relatively healthy individual before this accident. Afterwards, symptoms manifested themselves, which did not sufficiently subside after August 25, 1980, so as to allow a segregation of the causal connection between the accident and these subsequent problems. Plaintiff felt better and then worse, but never completely relieved of symptoms. The facts surrounding plaintiff’s medical history support a finding that the accident was a legal cause of plaintiff’s problems. There was certainly a reasonable possibility of a causal connection between the accident and the disabling condition. Hammond, supra. I would find Aetna responsible for payment of benefits through plaintiff’s death.
Accordingly, I dissent.