ALFORD, Judge.
Plaintiff-appellant, Jo Ann Chaney, appeals from the dismissal of her action in worker’s compensation against defendants-appellees, Harvest Manor Nursing Home (Harvest) and its insurer, Ranger Insurance Company (Ranger). Plaintiff was injured on November 9, 1981, in the course and scope of her employment as a nurse’s aide for Harvest. She was paid weekly compensation benefits from November 10, 1981, through January 25, 1982, at the rate of $92.00 per week for a total of $1,012.00, plus medical expenses. Plaintiff contends that the trial court erred in its finding of fact that physiological changes in plaintiff between January, 1983, and October, 1983, were not related to the accident of November, 1981. We disagree with plaintiff and affirm the trial court’s decision.
On the date of the accident, November 9, 1981, plaintiff was treated by a Dr. Walker. However, Dr. Walker’s testimony was not presented at trial. On November 16, 1981, plaintiff saw Dr. J.W. Varnado. Dr. Var-nado hospitalized plaintiff from November 16, 1981, until November 23, 1981. Although Dr. Varnado did not testify, the hospital records indicate that his diagnosis upon discharge was “acute lumbosacral strain-resolving”. The discharge s.ummary also indicates that x-rays taken at the hospital were normal.
Dr. Varnado referred plaintiff to Dr. William L. Fisher, Jr., a neurosurgeon. Dr. Fisher’s initial examination of plaintiff on December 7, 1981, revealed no positive physical findings. Dr. Fisher testified by deposition that he would give plaintiff “the benefit of the doubt” and hospitalize her for physical therapy. It was his opinion at that time that, “if anything,” plaintiff’s complaints indicated lumbar muscle strain. X-rays taken during plaintiff’s hospital stay were normal according to the radiologist, Dr. Charles Greeson, and according to Dr. Fisher. Dr. Fisher testified that at the time of plaintiff’s discharge on December 18, 1981, it was his opinion that plaintiff would be able to resume her usual occupational duties. Dr. Fisher also stated plaintiff reported that at that time she was asymptomatic. The discharge summary shows the final diagnosis was low back strain. Dr. Fisher scheduled plaintiff for a follow-up visit on January 3, 1982. Although Dr. Fisher’s follow-up examination indicated that plaintiff was totally normal from an objective standpoint, plaintiff complained of pain at that time. Dr. Fisher *848 then referred plaintiff to Dr. John R. Clifford, noting that if Dr. Clifford’s findings were also negative, then it would be recommended that plaintiff return to work.
Dr. Clifford, a neurosurgeon, first examined plaintiff on January 20, 1982. Dr. Clifford diagnosed plaintiff as having low back pain which had no organic basis. He also noted that she had some abnormal pain behavior, and that he did not think that she had any significant problems. It was Dr. Clifford’s opinion that plaintiff could return to work.
Plaintiff testified that she saw a Dr. Forrest at some point. However, it is unclear as to when she saw him, and neither his report nor his testimony was produced at trial.
On January 17, 1983, (approximately one year after Dr. Clifford’s initial examination), plaintiff, at the request of her attorney, was examined by Dr. Stuart Phillips, an orthopedic surgeon. Dr. Phillips noted that x-rays indicated arthritis with spur formation at the L2-3 and L3-4 level. His diagnosis was aggravation of arthritis by trauma. Dr. Phillips added that he felt that her arthritis was “a little bit more” than would be expected with the age and sex of plaintiff. Dr. Phillips next saw plaintiff on October 18, 1983, and noted that new x-rays indicated an increase in the spurring. Dr. Phillips diagnosed permanent aggravation of arthritis, resulting in a 10 percent impairment of the lumbar spine, with a 5 percent impairment of function of the body as a whole.
Between visits to Dr. Phillips, plaintiff again saw Dr. Clifford on February 18, 1983. Dr. Clifford testified that x-rays taken at the Baton Rouge General Hospital in February of 1983 were totally normal. He also examined x-rays taken in December of 1981 and January of 1983, all of which, in his opinion, were normal. Dr. Clifford indicated that plaintiff’s examination at that time was one hundred percent normal, and that plaintiff had no disability.
He also explicitly disagreed with Dr. Phillips’ statement that plaintiff’s x-rays were abnormal. It was Dr. Clifford’s opinion that it was in plaintiff’s best interests to resume her work duties, and he would attach no disability rating to her problem.
Plaintiff argues on appeal that the trial court was in error in its finding of fact that changes in plaintiff’s physical condition between January, 1983, and October, 1983, were not related to the accident of November 9, 1981. The plaintiff-employee in a worker’s compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982). It is apparent from the record that plaintiff failed to meet her burden.
The majority of the medical evidence presented at trial conflicts with the opinion of Dr. Phillips. Dr. Fisher recommended that plaintiff return to work, noting that she had no objective problems. Dr. Clifford was also of the opinion that plaintiff was not disabled and could return to work. Dr. Phillips presented the sole medical opinion of record that plaintiff had some disability. However, we note that Dr. Phillips first saw plaintiff at the request of her attorney approximately twelve months after she had last received any medical attention of record. Furthermore, Dr. Phillips freely admitted that he was not a treating physician. Dr. Fisher, however, clearly was a treating physician. It is well settled that the diagnosis and opinion of the treating physician are entitled to more weight than those of doctors examining the plaintiff for consultation for litigation purposes only. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984).
Plaintiff argues that the trial court’s finding that she was not disabled was based upon a misunderstanding of Dr. Phillips’ deposition and, accordingly, the judgment should be reversed. While it is true that the trial court mistakenly indicated that Dr. Phillips found plaintiff free of spurs on January 17, 1983, it is also true from a careful evaluation of the record that the lower court fully realized the implica *849 tions of Dr. Phillips’ findings as a whole. The trial court noted explicitly that Dr. Phillips had found arthritis or degeneration of L-2,3 and L-3,4 or the spaces in between, as aggravated by trauma. It is apparent from the record that the trial court was of the opinion that the diagnoses of Dr.’s Fisher and Clifford were entitled to more weight than the findings of Dr. Phillips in this case.
Finally, we note that plaintiff testified as to her disability. Plaintiff stated that Dr. Phillips was able to help her more and provide more relief than the other doctors. Apparently the trial court did not attach much credibility to plaintiff’s statements, considering the fact that Dr. Phillips testified that he had merely examined, and not treated, plaintiff.
The lower court’s finding that plaintiff was not disabled was largely based upon a credibility determination. After a careful review and evaluation of the record, we are convinced that the trial court was not clearly wrong in its factual determination that plaintiff was not disabled. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, for the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.