KLIEBERT, Chief Judge.
This litigation, which was in the posture of a worker’s compensation suit when tried in the court below, is before us on an appeal taken by the plaintiff from a judgment of the lower court which granted the defendants’ motion for involuntary dismissal. We affirm the trial court’s decision.
The original petition was filed by plaintiff, Stephen W. McKay, on July 25, 1983. In it he recited that as a result of exposure to radiation while in the employ of OIS Mobile Lab, Inc. in 1978 through 1979 and Assured Inspection Management, Inc. in 1979 and 1980 he became the victim of testicular cancer which had metastasized and as a consequence of which he had become permanently disabled.
An amending petition was filed on January 10, 1985 by Laura McKay alleging that the original plaintiff had died of cancer on February 6, 1984 and praying that she, his mother and sole heir, be substituted as party plaintiff. This and yet another amending petition, filed on February 29, 1986, joined other parties defendant and asserted a cause of action in tort in addition to the original claim in compensation. Following hearings and rulings on various motions and exceptions there was left for decision by the trial court only the compensation claim against Mobile Lab and Assured Inspection.
Trial was held on October 23, 24 and 25, 1990. The evidence presented by the plaintiff, in addition to her own testimony, consisted for the most part of that of Dr. Donna Ryan and Dr. Robert D. McAffee, and a Mr. Cliff McQuillian, a principal with Assured Inspection, who testified with respect to the decedent’s employment as an x-ray technician inspecting pipe welds and the equipment used, etc.
All parties agreed that there are two possible bases of recovery in compensation. First, under R.S. 23:1031, relative to personal injury by accident arising out of the employment and, second, R.S. 23:1031.1 relating to “occupational disease.” With re *730 spect to the defendant Mobile Laboratories, Inc., the trial judge found: 1) the decedent had not been employed for twelve months, 2) the “overwhelming preponderances” rule developed under R.S. 23:1031.1 was applicable, and 3) plaintiff failed to meet it. With respect to Assured Inspection, the court below referred to an incident testified to by Mr. McKay as having occurred on September 17, 1979 and, applying the preponderance of evidence rule, found the plaintiff had failed to meet that rule.
The plaintiff-appellant raises two “Assignments of Error” before this Court. The first is that the trial court failed to distinguish the “medical” meaning of cause from the “legal” meaning of cause and improperly concluded that “the decedent’s accidental exposure to emergency levels of radiation could not have caused his cancer,” relying on expressions found in Hammond v. Fidelity and Cas. Co. of New York, 419 So.2d 829 (La.1982).
Appellant produced the two expert witnesses, referred to previously, who testified with respect to the “cause” of the decedent’s cancer. Dr. Donna Ryan is a 1970 graduate of the L.S.U. School of Medicine and was accepted by all parties as an expert in the field of oncology. Dr. Robert B. McAffee is a graduate of Central Methodist College, Fayette, Missouri, with a Bachelor of Arts degree from tha:t institution together with a Ph.D. from Tulane University in physiology. He was employed as a professor/researcher at the University of New Orleans and, after extensive questioning as to his background and qualifications, was accepted by the trial court as an expert in the field of physiology.
Dr. Ryan was first called upon to treat Mr. McKay in September 1982, at which time he had embryonal carcinoma of the testes which had metastasized to the lungs. With respect to the question of radiation being a cause of testicular cancer, she testified as follows:
“Q. Okay. You spent some time trying to isolate potential causes by talking with Stephen and his mother, is that right?
A. Oh, yes.
Q. Alright. And you consulted some respected medical literature to see other potential causes of testicular cancer, didn’t you?
A. In — let me answer the question this way. Over the year and a half that I took care of Stephen, on several occasions we discussed what caused his cancer. And so we went over, you know, what the prior testimony several times. And in relation to what investigations I did, I looked in the textbook and discussed it with my colleagues and particular the issue of radiation exposure and testicular cancer and there was no known link that I could find from just cancer textbooks or from discussion with oncologists.
Q. Is it true that there are many instances where you can’t associate any known risk factor to testicular cancer that has developed?
A. In individual patients, yes, it’s not unusual to see a patient who has no known risk factors.
Q. Is it true that embryonal cell cancer has nothing to do with when you are an embryo?
A. Yes, that’s true.
Q. And isn’t it true that you don’t know what caused Stephen McKay’s testicular cancer?
A. That’s true.
MS. VAN MEERVALD;
No further questions.
THE COURT:
Cross?
CROSS EXAMINATION
BY MR. LOGAN:
Q. Dr. Ryan is there a particular age group in which you find testicular cancer among male patients?
A. Yes, it’s found in younger men, usually between 20 and 40. The, there are two types: seminomas, which occur a little bit over the age group, and the non-seminomas, which are a little younger. But the 20 to 40 is the general age span that it’s found.
*731 Q. Did Stephen McKay fall within that age, that age factor?
A. Yes. Yes, he did.
Q. Is it possible to have an individual falling within that age category whose mother did not ingest DES, he did not have an undescended testicle and did not have mumps orchitis, that subsequently develops testicular, embryonal testicular cancer?
A. That’s correct. It’s not unusual to see a patient with testicular cancer who has no known risk factors.”
In response to questioning by the trial judge, this witness gave the following testimony:
“THE COURT:
What did he tell you happened?
THE WITNESS:
Well, I routinely ask the patients, cancer patients, about radiation exposure. And throughout his illness Mr. McKay asked me several times whether radiation could be a factor in his developing testicular cancer. And he was particularly concerned about an incident that he related to me. And that incident was, what he described as being exposed to a tool that was used to determine pipe weld and he said that he had let the radiation source of the tool unshielded in the back of the van and drove around in the van with the radiation source and considered himself to have radiation exposure and asked me whether that was related to the testicular cancer or not.
Q. And what did you tell him, doctor?
A. I told him that I didn’t know if it was related to his testicular cancer or not. The known risk factors were, as we discussed. That I didn’t, that looking it up in the textbook there was — that radiation exposure was not listed as one of the causes of being an increased risk of testicular cancer but that it was associated with many other cancers. That it wasn’t disproven to be not a risk factor for testicular cancer and that it was impossible for me to know.”
* * * * * *
“So it would be fairly difficult to study, I mean there are only 300 cases of this a year in the United States.
Q. Now, did you rule out 100% radiation as a cause of this testicular cancer?
A. No.
Q. Could that have been a causative factor?
A. Yes.”
* * * * * *
“THE COURT:
Now with a reasonable degree of medical certainty, can you tell me that exposure to radiation caused this gentlemen’s testicular cancer?
THE WITNESS:
I don’t know.
THE COURT:
Can you tell me with any reasonable degree of medical certainty, what your opinion is, of his causative factor of this testicular cancer and ultimate demise?
THE WITNESS:
Judge Porteous, I honestly don’t know what caused his testicular cancer. Whether its radiation or not, I don’t know. It’s not the first patient I’ve had with testicular cancer who asked me if they thought radiation — their radiation exposure, could have something to do with it. What I — but as near as I can find in the textbooks, it’s not a known risk factor.”
Dr. McAffee, displaying none of the professional caution and devotion to accuracy which characterized the testimony of Dr. Ryan, experienced no difficulty in concluding that radiation causes cancer. He based his conclusion on tests involving laboratory animals and a study of young male patients who had been radiated for the treatment of spondylites, one of whom had developed testicular cancer.
Although as pointed out previously, Dr. McAffee was accepted by the trial judge as an expert in the field of physiology, his qualifications were made an issue by an in limine motion to exclude his testimony and his qualifications remain under attack in this Court. Forcefully brought out are the facts that this man has no medical degree *732 nor is he-an oncologist. He has no background in epidemiology or cancer nor any experience in gamma (ionizing) radiation as is involved in this litigation. His expertise lies in microwave radiation (non-ionizing) which all admit is very different from gamma radiation which was allegedly the cause of the decedent’s cancer.
Dr. McAffee’s professional training is in the field of physiology. His professorship consists of teaching a one hour ethics course in electrical engineering and has nothing to do with radiation. With the exception of a five hour week in consulting work with the Veterans Administration Hospital, all of his previous limited consultation work was done in the field of radio frequency (non-ionizing) radiation. None of the articles he has published has anything to do with gamma radiation or cancer, nor has any of his research related to cancer in humans.
We are favorably impressed with the manner in which the lower court conducted the trial in this matter and the liberality extended to the plaintiff in his rulings, all in accordance with the spirit and intent of the compensation statute. We are likewise impressed with his conclusions as to the testimony of Dr. McAffee, as follows:
“The other aspect, however, is the aspect dealing with an exposure presents a different scenario because that burden would be preponderance of evidence. I’ve looked at it, I would have to evaluate it under any given scenario, and giving it again a light most favorable to the plaintiffs, the problem is AIM’s (Sic, plaintiff’s) own exhibits and their own testimony and their own medical expert has told me that she cannot say with any degree “medical certainty” that radiation, in fact, caused the cancer herein in question. The courts are not absolutely bound solely by the testimony of physicians but in these particular types of cases, we must have some relationship of an event, if it existed, to the ultimate causative factor of an individual's demise and/or disability. I don’t have it. It does not exist in this case. It does not present itself and it has not been testified to. Again, Dr. McAfee has got a variety of expertise and I don’t question his sincerity, however, I do question and find unacceptable his conclusions based upon the evidence that’s been presented to this court. He makes quantum leaps with respect to documentation and makes quantum leaps close to, if not outside his area of expertise, which this court finds is not supported either by the testimony in the record or his own exhibits. Some of the exhibits, in fact, do not support nor do they help with respect to the claims made by Dr. McAfee in his conclusions. Again, he cannot himself relate by preponderance of the evidence which is more likely or more probable than not that an x-ray exposure in fact occurred, in fact was the causative factor in Mr. McKay’s embryonal testicular cancer and ultimate metastasis to other organs in the body.”
As pointed out earlier, the appellant’s position in support of Assignment of Error No. 1 is that under the authority of the Hammond case, supra, the burden of proof has shifted to the defendants. Counsel is in error. The holding in Hammond with respect to the shifting burden is that this occurs “provided the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. ” Hammond v. Fidelity and Cas. Co. of New York, supra, at page 831. (Emphasis supplied).
We are no more impressed with the testimony of Dr. McAffee than was the trial judge and would certainly not accept any of his conclusions which are either in conflict with or go beyond those reached by Dr. Ryan whose eminence in her field is unquestioned. Viewed in a light most favorable to plaintiff and acknowledging for purposes of this decision that the record establishes the occurrence of an accident or such fact as would require the application of the “preponderance of evidence” rule, we hold that the record fails to show the required “reasonable possibility of causal connection.” The testimony of Dr. Ryan taken as a whole does not establish such a connection and the testimony of Dr. McAffee inso *733 far as it conflicts with Dr. Ryan’s on this point is not acceptable.
Assignment of Error No. 2 asserts that the trial court ignored evidence of causative factors other than radiation which were present in decedent’s work environment and which, when combined with exposure to radiation, created a significant risk of cancer. This assignment has absolutely no merit whatever. The record contains no credible evidence as to his actual work conditions and, even assuming them to have involved exposure to petroleum distillates, heat, etc., as alleged, there is simply no proof that these factors caused the decedent’s cancer.
In summary, we respect that, viewing the matter in a light most favorable to the plaintiff and thereby applying the “preponderance of evidence" rule we find no manifest error in the trial judge’s finding that plaintiff’s expert, Dr. McAffee lacked expertise and credibility and that the testimony of her expert, Dr. Ryan, simply did not support her case.
The judgment of the lower court granting the defendant’s motions for involuntary dismissal was correct and is, therefore, affirmed. Costs of the appeal are to be borne by appellant.
AFFIRMED.