# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 18-556


DEBRA S. LENOX

VERSUS

CENTRAL LOUISIANA SPOKES,

LLC D/B/A RENEGADE HARLEY, ET AL.



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT NO. 2
PARISH OF RAPIDES, NO. 17-01470
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.


**REVERSED AND REMANDED.**

**George C. Gaiennie, III**
**Chris J. Roy, Sr.**
**P.O. Box 7622**
**Alexandria, LA 71306**
**(318) 767-1114**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Debra S. Lenox**

**John J. Rabalais**
**Matthew D. Crumhorn**
**Rabalais Unland, LLP**
**1404 Greengate Drive, Suite 110**
**Covington, LA 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Zurich American Insurance Company**
    **Central Louisiana Spokes, LLC D/B/A Renegade Harley**

**EZELL, Judge.**

Debra Lenox appeals a judgment from the Office of Workers' Compensation which, granted summary judgment in favor of her employer, Central Louisiana Spokes, LLC, d/b/a Renegade Harley, and its workers' compensation insurer, Zurich American Insurance Company. The issue on appeal is whether there is a genuine issue of material fact as to whether Ms. Lenox's spinal infection was causally related to her work accident.

## FACTS

Ms. Lenox went to work for Renegade Harley in Alexandria, Louisiana, in April 2014, as a store clerk/manager. On November 22, 2016, around lunchtime, Ms. Lenox went to the back to get a pair of boots for a customer. She located the boots about halfway down a shelf and bent over to get them. When she bent over, she experienced a weird sensation. She brought the boots to the customer and chatted with the customer for a while.

Ms. Lenox's husband came by the store to meet her for lunch. She told him that her back started "killing" her suddenly and pain was shooting down her right leg. She reported the incident to Gayle Stolzer, the human resources person at Renegade Harley. Ms. Stolzer told Ms. Lenox to go to Kisatchie Medical Center, a walk-in clinic, for treatment. A drug screen was performed, which was negative. She was diagnosed with lumbar strain and prescribed Ansaid and Flexeril. She then went home.

The next day, Ms. Lenox woke up in excruciating pain and could not get out of bed. An ambulance was called, and Ms. Lenox was taken to St. Francis Cabrini Hospital. A lumbar CT scan revealed changes at L4-5 and L5-S1, with a possible pars defect at L5. Dr. Gregory Dowd, a neurosurgeon, consulted on Ms. Lenox's

case. He explained that a pars defect is a defect in the bony bridge connecting the front and back portions of the vertebral body. Dr. Dowd opined that the back and leg pain was suggestive of radiculopathy caused by a compressed nerve. He ordered an MRI, which was performed on November 25, 2016.

The MRI indicated degenerative disc disease and a small focal disc protrusion at L5-S1. Dr. Dowd testified that the disc protrusion at L5-S1 caused significant impression on the nerve at that level and was likely responsible for the right-sided lumbar radiculopathy. Ms. Lenox received an epidural steroid injection on November 27, 2016. During her stay at St. Francis Cabrini Hospital, Ms. Lenox developed shoulder pain, so a medical neurologist consulted on her case. That doctor opined that Ms. Lenox needed a rheumatology evaluation. She was discharged from the hospital on December 1, 2016.

Continuing to suffer with pain, Ms. Lenox was taken by ambulance and admitted to Rapides Regional Medical Center on December 3, 2016. Dr. Dowd's associate, Dr. Michael Drerup, saw Ms. Lenox. Dr. Drerup noted his concern for sepsis. An MRI was performed that day with similar findings as the first MRI. Another MRI was performed on December 9, 2016. This time it was performed with and without contrast. The MRI indicated evidence of discitis, osteomyelitis, and possible epidural abscess.

Dr. Dowd testified that Ms. Lenox developed an infection of the lumbar spine. She also demonstrated weakness in the form of foot drop. He stated that the infection caused left-sided compression whereas the original herniated disc caused right-sided compression. All issues were at the same L5-S1 level. Dr. Dowd performed surgery on December 11, 2016. Dr. Dowd testified that the surgery was targeted primarily to drain the infection and to decompress the affected nerve.

2

Ms. Lenox was discharged from Rapides Regional Medical Center on December 20, 2016. She was admitted to Christus Dubuis of Alexandria for long-term care due to the infection. On February 4, 2017, Ms. Lenox was discharged to St. Francis Cabrini Hospital for rehabilitation for two weeks before she went home.

On March 9, 2017, Ms. Lenox filed a disputed claim for compensation. She alleged that she did not receive wage benefits and medical treatment was not authorized. The Defendants filed a motion for summary judgment. They contended that they accepted the accident as compensable but only paid for medical treatment up to the time Ms. Lenox developed the spinal infection. The Defendants dispute that the spinal infection was causally related to the original work accident.

A hearing on the motion for summary judgment was held on April 2, 2018. The workers' compensation judge (WCJ) held that the spinal infection was not causally related to the accident and granted the Defendants' motion for summary judgment, dismissing Ms. Lenox's claim with prejudice. Ms. Lenox then filed the present appeal.

## SUMMARY JUDGMENT

Ms. Lenox claims that the trial court erred in granting summary judgment to the Defendants. She argues that the law is so well-settled in this area and that she is entitled to recover from her employer even if her work-related injury was exacerbated by infection contracted during her treatment.

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action . . . . and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). This court reviews a trial court's decision on a motion for summary judgment applying a de novo

3

standard of review. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So.3d 876, *cert. denied*, ___ U.S. ___, 135 S.Ct. 197 (2014).

The burden of proof is on the mover unless the mover will not bear the burden of proof at trial, in which case the mover is not required to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. La.Code Civ.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.

*Jackson*, 144 So.3d at 882.

The Defendants claim that there is no causal relationship between the infection and the work accident. It is Defendants' position that the causal link is only a "possible" one, which is not sufficient to meet Ms. Lenox's burden of proof.

> The workers' compensation laws provide coverage to an employee for personal injury received by accident arising out of and in the course of employment. LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the

4

injury caused the disability. *See DeGruy v. Pala, Inc.*, 525 So.2d 1124, 1130 (La.App. 1st Cir.), *writ denied*, 530 So.2d 568 (La.1988). Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. *Holiday v. Borden Chem.*, 508 So.2d 1381, 1383 (La.1987). Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. *DeGruy*, 525 So.2d at 1132.

Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the reported accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. *Peveto v. WHC Contractors*, 93-1402 (La.1/14/94), 630 So.2d 689, 691. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320, 324-25 (La.1985).

Although procedural rules are construed liberally in favor of workers' compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. *Buxton v. Iowa Police Department*, 2009-0520 (La.10/20/09), 23 So.3d 275, 283.

*Welborn v. Thompson Const.*, 15-1217, pp. 4-5 (La.App. 1 Cir. 2/26/16), 191 So.3d 1086, 1088-89; *See also Hammond v. Fidelity & Cas. Co. of New York*, 419 So.2d 829 (La.1982).

"[I]t is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover." *Id.* It is appropriate to consider medical testimony in the light of other nonmedical, credible evidence, such as a

sequence of symptoms or events, in order to establish the probability that the disability was caused by a work accident. *Id.*

Both Ms. Lenox and the Defendants relied on Dr. Dowd's deposition testimony. Dr. Dowd testified that the sepsis infection could be caused by a urinary tract infection or untreated pneumonia, both of which Ms. Lenox developed during treatment. However, he stated that an epidural steroid injection could also cause an infection and that patients sometimes develop infections when they receive injections for medical treatment. Dr. Dowd further stated that it is difficult to determine what caused the infection. He further stated that when Ms. Lenox was discharged from St. Francis Cabrini Hospital, which was four days after the injection, she had an elevated sedimentation rate and white blood cell count. This is an indication of an early brewing infection. Dr. Dowd opined that Ms. Lenox was demonstrating signs of infection at the time she was discharged from St. Francis Cabrini Hospital that were not present when she was admitted.

Dr. Dowd further testified that Ms. Lenox's earlier MRIs after the accident did not show evidence of an infection. The later MRIs, which were with and without contrast, reveal the infection. Dr. Dowd agreed that this change demonstrated a chronological development that the infection developed during the course of her treatment. He specifically stated that he was of the opinion that she "developed new symptoms, signs and findings of infection during her treatment." He was also not aware of Ms. Lenox suffering with an infection before the accident.

The Defendants cite this court's case in *Sweat v. Sams Air Conditioning Maintenance Service*, 15-1100 (La.App. 3 Cir. 4/6/16), 188 So.3d 482, for the premise that a "possible" causal link to the accident is not sufficient to meet Ms.

Lenox's burden of proof. We find that the evidence in the record in the present case is very different from the evidence in *Sweat*.

Mr. Sweat twisted his back while installing ductwork. When he went to the doctor, it was discovered he had an epidural abscess already present in his thoracic spine levels T3 to T7. The only evidence in the record was the testimony of Mr. Sweat's treating physician, Dr. Drerup. After reviewing the evidence, this court held that Dr. Drerup clearly stated, "several times, in several ways, that the infection that caused Mr. Sweat's abscess was not caused by trauma, injury, or strain. The abscess was caused by bacterial infection alone." *Id*. at 483-84.

Even if Ms. Lenox was predisposed to infection before the accident, the supreme court has stated:

> The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee's disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident.

*Hammond*, 419 So.2d at 832.

In the present case, there is clear evidence that Ms. Lenox had no infection before the accident. Dr. Dowd testified that the infection developed during her stay at St. Francis Cabrini while she was being treated for her workplace injury. He further stated that it is possible that the epidural steroid injection she received to treat her workplace injury caused the infection. We find that there is a genuine issue of material fact as to whether Ms. Lenox's infection was contracted during her course of treatment for her workplace accident.

For these reasons, we reverse the judgment of the Office of Workers' Compensation granting summary judgment in favor of the Defendants and

7

dismissing Ms. Lenox's workers' compensation claim. Costs of this appeal are assessed to Central Louisiana Spokes, LLC, d/b/a Renegade Harley, and its workers' compensation insurer, Zurich American Insurance Company. This case is remanded to the Office of Workers' Compensation for further proceedings.

**REVERSED AND REMANDED**.