SARTAIN, Judge.
The accident giving rise to this litigation occurred on July 8, 1974. Liability of the defendants was admitted at the trial on the merits. The district judge awarded Mrs. Barbara Hull the sum of $27,000.00 for personal injuries and Mr. James W. Hull the sum of $4,904.91 for special damages.
Defendants, John C. Bigelow and his employer, North American Van Lines, have appealed and contend that plaintiffs have failed to establish a causal relation between the injuries complained of and the accident and that under these circumstances the above awards are grossly excessive and should be reduced. We affirm.
Mrs. Hull was alone in her car when it was struck from the rear by a large semi-rig truck owned by North American and driven by Bigelow. She claims injuries in three general areas:- lumbar and cervical spine; bladder; and an associated series of conditions referred to as colitis. It is the latter of these three injuries that provokes the most controversy.
With respect to the spinal injuries, it suffices here to say that Mrs. Hull was treated by Dr. Richard Bolton, an orthopedic surgeon. He diagnosed her injuries as a strain to the cervical and lumbar regions of the spine. She was fitted with a cervical collar, continued on muscle relaxants and Tylenol, physical therapy, and was advised to rest and apply heat to the affected area. She remained under Dr. Bolton’s care for this particular injury until October 11,1974. On this latter date, though her injuries had not become completely asymptomatic, she was discharged by Dr. Bolton. The latter’s testimony medically corroborates Mrs. Hull’s testimony relative to severe pain in the area of the neck and back, associated with marked limitation of motion.
On June 6, 1974, approximately a month before the accident, Mrs. Hull underwent a surgical procedure referred to as a transurethral figuration of the trigone, bladder neck and urethra. The trigone is described as a triangular area of the interi- or bladder between the opening of the ureters and the orifice of the urethra. In this procedure the inflamed tissue is removed by electrical cauterization so that it may be replaced by a regrowth of normal tissue. She was treated for this difficulty by Williams D. Wall, IV, a specialist in urology. On June 24, 1974, he noted some “bleeding off” and treated Mrs. Hull with antibiotics and pain pills. The bleeding stopped. However, on July 10, 1974, (two days following the accident) the bleeding recurred and she was ultimately hospitalized for this condition on August 3, 1974. Pertinent to this litigation is the relation, if any, between Mrs. Hull’s chronic bladder disorder and the accident. Dr. Wall deposed that while the accident did not aggravate her overall condition or worsen the inflammation of the bladder, it could have aggravated the healing process by causing bleeding. A fair reading of his testimony, in our opinion, establishes a causal relation between the accident and this particular hospitalization. Further, it should also be noted that throughout this period of time Mrs. Hull was having difficulties with her neck and back.
We now turn to the third alleged injury. On August 19, 1974, Mrs. Hull experienced for the first time severe abdominal cramps, vomiting, and bleeding and passing of mucous through the rectum. As a result of this colonic condition, there followed five hospitalizations, extensive medical treatment, and related expenses. Colitis is basically an inflammatory bowel disease. It is totally unpredictable and its cause is unknown. The crucial question here, preter-mitting etiology of the disease itself, is whether the attack of this disease was brought on by the strain and stress experienced by Mrs. Hull as a result of the accident. We are satisfied that the record amply supports the nervous tension, strain and anxiety suffered by Mrs. Hull immediately following the accident and throughout the period of time she was treated for colitis. With respect to this condition Mrs. Hull was treated by Drs. Cowick, Leo A. Farmer, and J. Kerry Howell, all considered specialists for this particular physical disorder. These doctors were questioned at length concern *218 ing the onset of the initial attack. Dr. Howell stated that ruling out an antibiotic reaction or gastrointestinal virus, he would give emotional stress “high consideration” as precipitating such an attack. Dr. Farmer stated that whereas increased emotional stress does not necessarily lead to an aggravation of the disease, “it does tend to recur.”
We have not endeavored to particularize the colloquy between these physicians and counsel for the respective parties. While we are not favored with oral or written reasons from the trial court, the district judge undoubtedly determined that the colonic attacks, suffered by Mrs. Hull were brought on by the emotional stress and strain she endured as a result of the accident.
Proof of a causal relation between an accident and subsequent physical disability is quite often a difficult task. In the present case it is all the more difficult because the cause of colitis itself is not at the present time subject to conclusive medical determination. It is conceded that nervous tension and emotional stress are not now considered as factors causing the disease. They are, however, considered to be factors which precipitate an attack of that disease. On this point, Dr. Howell deposed:
“Q. You state in your letter, ‘It is known, however, that emotional tensions and stress oftentimes cause attacks of idiopathic ulcerative colitis and at times may cause precipitation of an attack of Crohn’s disease.’
A. Yes.
Q. Now, are you making a distinction between causing the disease itself and causing an attack at a particular time?
A. Yes,' right.
Q. Okay. So that if I’m reading you correctly, you’ve said that although you don’t know exactly what causes these diseases that it has been somewhat ruled out as — emotional tension and stress has been ruled out as a cause of the disease itself, is that correct?
A. That’s precisely it.
Q. But on the other hand emotional stress and tension can precipitate a particular attack of the Crohn’s disease?
A. Exactly.”
In Peppers v. Toye Brothers Yellow Cab Company, 198 So. 177, 182 (Orleans App., 1940) the court stated:
“. . . where a person who enjoyed good health suffers an accident and within a short time thereafter a dormant preexisting illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the results claimed for did happen.” (Emphasis added.)
See also, Miller v. Allstate Insurance Company, 221 So.2d 908 (1st La.App., 1969); and Slayton v. Grant, 248 So.2d 16 (1st La.App., 1971).
Accordingly, the test is whether plaintiffs have shown that there is a “reasonable possibility” that the colitis attacks were triggered by the emotional stress and nervous tension endured by Mrs. Hull immediately following the accident. Our examination and appreciation of the testimony of these specialists satisfies us that the conclusion reached by the trial judge is a fair and reasonable one and should be affirmed. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Defendants’ claim that the awards made herein are excessive is based primarily on their contention that Mrs. Hull’s hospitalizations, one for the bladder complaints and five for the colitis attacks, are not related to the accident. Having found that these disabilities are related to the accident and viewing the awards accordingly, we do not find them to be excessive and hold that *219 they fall well within the discretion accorded the trial judge. C.C. Art. 1934(3).
For these reasons, the judgment of the district court is affirmed at appellants’ costs.
AFFIRMED.