CRAIN, Judge.
Plaintiff, Emmanuel Scott, was employed by Acadian Concrete Company (Acadian). His job consisted primarily of mixing concrete. A few days prior to March 28, 1983, during the course and scope of his employment, plaintiff accidentally spilled the contents of a bag of cement. Much of the powdered cement fell into his work shoes. Upon complaining of a burning sensation in his feet, plaintiff was hospitalized at South Louisiana Medical Center (SLMC) from March 28, 1983, to April 8, 1983. The treatment was for cellulitis and inflammation of the right foot, the underlying etiology of which was suspected to be chemical burns caused by wet cement or “cement poisoning”. Plaintiff returned to work on approximately April 16, 1983. On April 20, 1983, plaintiff dropped a concrete block on his right foot and had not returned to work since that date.
Plaintiff was treated as an outpatient at SLMC and was again hospitalized from July 15, 1983 to August 3, 1983, for celluli-tis of the right foot and inflammation of the left leg both of which again were suspected to be caused by either chemical burns or contact dermatitis. From October 7, 1983, to April 25, 1984, plaintiff was treated by Dr. Helen Selser, dermatologist, for ulceration of the left foot. Dr. Selser diagnosed plaintiff to be suffering from an allergic reaction to chemicals present in shoes. In her opinion, plaintiff was able to return to his previous work as of April, 1984, provided he wear shoes which do not contain the chemicals to which plaintiff is allergic.
North River Insurance Company (North River) was the worker’s compensation insurer prior to April 6, 1983. Maryland Casualty Company (Maryland) was the worker’s compensation insurer thereafter. Plaintiff instituted this worker’s compensation action against North River, Maryland and Acadian. Plaintiff received no worker’s compensation benefits before the institution of this action. Prior to the date of trial Maryland, Acadian and plaintiff compromised the suit and Acadian and Mary *448 land were dismissed from the action. Plaintiff reserved all rights against North River regarding the “accident of March 28, 1983.”
After trial on the merits, judgment was rendered in favor of plaintiff against North River and Acadian for the temporary total disability occurring during the time frame of March 28 to April 16, 1983. The trial court found that plaintiff was no longer disabled when he returned to work on April 16, 1983, and that additional problems suffered by plaintiff resulted solely from the work-related injury which occurred on April 20, 1983. North River’s refusal to pay worker’s compensation benefits to plaintiff for the time period of March 28 to April 20, 1983, was found to be arbitrary, capricious and without probable cause. Plaintiff was awarded worker’s compensation, medical expenses, penalties, attorney fees, legal interest from date of judicial demand and expert witness fees. Prom this judgment plaintiff appeals alleging as error: (1) the trial court’s determination that the accident of April 20, 1983, was “totally responsible for plaintiffs condition after April 16, 1983”; (2) the trial court’s failure to award worker’s compensation benefits through April 25,1984; and (3) the trial court’s improper admission of the use of the “special defense of a ‘second accident.’ ”
In the first and second assignments of error plaintiff contends that the trial court erred in finding that a second accident was totally responsible for plaintiff’s condition after April 16, 1983. Plaintiff contends that the work-related condition for which plaintiff was hospitalized from March 28 to April 8, 1983, progressively worsened resulting in temporary total disability from March 28, 1983 to April 25, 1984.
The final diagnosis for plaintiffs initial hospitalization of March 28,1983 to April 8, 1983, was “alcohol abuse and dependence; alcohol withdrawal syndrome; cellulitis and chemical burns of the right foot and tinea pedis.” He was given prescriptions for Silvadene and Lotrimin creams and scheduled for follow-up as an outpatient at the SLMC Surgery Clinic. Plaintiff stated that he returned to work on or around April 16, 1983, because he needed the money, despite the fact that his foot was not completely healed. On April 20, 1983, plaintiff testified that he dropped a concrete block on his right toe which worsened his condition.
Plaintiff was seen for follow-up treatment at SLMC Surgery Clinic on April 20, 1983. The progress notes of that visit state: “Foot is healing.Minimal swelling. No evidence of cellulitis at present time.” He was advised to continue the present course of treatment. He was next seen at SLMC Medicine Clinic on April 27, 1983. The progress notes of that visit reveal that the right foot was healing although some depigmented areas remained and in two weeks the new skin should be thick enough to enable plaintiff to return to work. Plaintiff was again seen for followup care at SLMC Surgery Clinic on June 20, 1983. According to the progress notes of that visit, plaintiff suffered from possible contact dermatitis.
Plaintiff was again hospitalized at SLMC from July 15, 1983 to August 3, 1983. Upon admission to the hospital, the physical examination revealed swelling and inflammation of the right foot. Additionally, the left leg was tender to touch. Excoriation and serosanguineous oozing were present. The left leg was also covered with flaky keratonic plaques. The tentative diagnosis upon admission was “cellu-litis/chemical bum versus contact dermatitis with secondary infection and cellulitis.” The final diagnosis was cellulitis with fungal involvement. Upon discharge plaintiff was advised to keep his foot elevated. Medications were prescribed. Plaintiffs foot was “much improved” upon discharge.
From October, 1983, to April 25, 1984, plaintiff was treated by Dr. Helen Selser, dermatologist, for ulceration of the left foot. Dr. Selser’s initial impression, based on plaintiff’s history and physical examination, was that plaintiffs condition was the result of an allergy to wet cement. She was unable to make a firm diagnosis until plaintiffs condition completely cleared and a patch test could be administered. The results of the patch test revealed that *449 plaintiff was allergic to certain chemicals present in most shoes. He was not allergic to wet cement. Dr. Selser would only venture an opinion with respect to the etiology of plaintiffs condition from October, 1983 to April, 1984. In her opinion, plaintiff suffered from contact dermatitis, an allergic reaction to the chemicals present in shoes. Possible dampness of the shoes, which might be incurred while working with wet cement, could cause the skin to come in contact with the chemical resulting in an acute allergic inflammation.
The plaintiff in a worker’s compensation case has the burden of establishing a controverted fact by a preponderance of the evidence. “Proof by a preponderance of evidence is sufficient when ‘the evidence taken as a whole, shows that the fact .... sought to be proved is more prob: able than not.’” Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042, 1044 (La.1982) (citations omitted). An employee is entitled to the presumption that a work related accident caused the claimed disability in cases where “an otherwise healthy worker suffers an accident at work and is thereafter disabled ... so long as the medical evidence establishes a reasonable possibility of such a connection,” Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981), or where “the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.” Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985). This presumption applies where a work-related injury aggravates, accelerates or combines with a pre-existing injury which results in disability. Walton, 475 So.2d at 324-325.
Clearly, plaintiff’s physical condition had not completely healed when he was examined at SLMC as of April 20, 1983. As revealed in the progress notes of that visit, the treating physician noted the persistence of minimal swelling and advised plaintiff to continue the treatment regime prescribed upon discharge from SLMC on April 8, 1983.
Neither the deposition testimony of Dr. Selser nor the SLMC medical records unequivocally prove that the etiology of the cellulitis for which plaintiff was initially hospitalized was an acute allergic reaction to the chemicals in shoe leather. However, “[cjausation is not necessarily and exclusively a medical conclusion; it is usually the ultimate fact to be found by the court, based on all the credible evidence.” Young v. Aetna Life & Casualty Insurance Co., 497 So.2d 420, 422 (La.App. 3d Cir.1986). Plaintiff’s physical complaints commenced in March, 1983, and continued to manifest themselves in various forms and at differing levels of severity until April, 1984. After carefully reviewing the record, we find that plaintiff has met his burden of proving by a preponderance of the evidence that there is a reasonable possibility of a causal connection between the work-related disability which commenced on March 28, 1983, and the temporary total disability due to the acute allergic inflammation which was subsequently diagnosed on April 25, 1984. See Haughton v. Fireman’s Fund American Insurance Companies, 355 So. 2d 927 (La.1978). Accordingly, the judgment of the trial court is reversed in part. We pretermit discussion of the remaining assignment of error.
DECREE
For the foregoing reasons the judgment of the trial court is reversed in part and plaintiff is awarded benefits for temporary and total disability against defendants, North River and Acadian in the sum of $158.75 per week for fifty-six weeks, and $6,270.89 in medical expenses. Penalties are awarded in the amount of 12% of the benefit award. In all other respects the judgment of the trial court is affirmed. All costs are assessed to defendants, North River and Acadian.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.