626 So.2d 948 (1993)
James DOUCET, Plaintiff-Appellee,
v.
BAKER HUGHES PRODUCTION TOOLS, Defendant-Appellant.
No. 93-45.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1993.
*949 Michael Benny Miller, Crowley, for James Doucet.
Lisa Cloutier McCowen, Lafayette, for Baker Hughes Production Tools.
Before DOMENGEAUX, C.J., and GUIDRY, DOUCET WOODARD and DECUIR, JJ.
GUIDRY, Judge.
This is a worker's compensation case. Plaintiff, James Doucet, injured his lower back on April 23, 1990, while in the course and scope of his employment as a technical tools specialist for defendant, Baker Hughes Production Tools. Baker Hughes paid Doucet temporary total disability benefits through November 13, 1990. His benefits were terminated by Baker Hughes in reliance upon an October 24, 1990 report from his treating orthopedic surgeon, Dr. Gregory Gidman, who concluded that Doucet was no longer disabled from the April injury and capable of performing medium duty work. Apparently, out of an abundance of caution, Baker Hughes issued a supplemental earnings benefit (SEB) payment to Doucet on December 18, 1990. This was the final compensation payment made by Baker Hughes to Doucet.
On January 25, 1991, Doucet filed a disputed claim for compensation with the Office of Worker's Compensation (OWC), naming as defendants Baker Hughes and Travelers Insurance Company, their claims administrator. *950 Travelers did not provide worker's compensation insurance coverage to Baker Hughes, it merely serviced claims through a subsidiary company, Constitution State Service Company (Constitution). Following trial of this matter, the hearing officer determined that Doucet sufficiently proved that, because of his accident, he was disabled from performing the duties of his pre-injury employment. The OWC awarded Doucet SEB of $1,186.80 per month and found that Baker Hughes' failure to continue SEB payments after December 18, 1990 was arbitrary and capricious. In accordance with this finding, the hearing officer ordered Baker Hughes to pay a 12% penalty on all due and unpaid compensation payments. Additionally, Baker Hughes was ordered to pay Doucet $5,000 in attorney's fees and assessed a 12% penalty on compensation payments issued late during May and June of 1990.
From this judgment, Baker Hughes appealed and, in seven assignments of error, urges that the hearing officer erred in concluding Doucet sufficiently proved he was disabled and entitled to SEB and finding that Baker Hughes' conduct in terminating benefits was arbitrary and capricious. Doucet answered the appeal seeking an increase in his calculated average weekly wage and the attorney's fees award. For the reasons which follow, we reverse concluding that the hearing officer erred in awarding Doucet SEB, penalties, and attorney's fees.

FACTS
On April 23, 1990, Doucet was working at a land-based oil rig. His job involved heavy manual labor. While moving elevators in an attempt to clear a parking space near the rig floor for his truck, he felt his back snap after sliding the elevators approximately three feet. He was initially examined by Dr. Scott Thompson, who referred Doucet to Dr. Gidman. At the first examination on April 27, 1990, Doucet complained to Dr. Gidman of lower back pain on hyperflexion. Dr. Gidman detected no evidence of muscle spasm. X-rays taken on this date revealed Grade I spondylolisthesis at L5-S1, characterized by Dr. Gidman as a congenital defect of the pars interarticularis with spinal instability at the point of the defect. Dr. Gidman placed Doucet on non-work status.
Dr. Gidman saw Doucet on six occasions following this initial examination. He noted improvement through therapy on each visit, but cautioned that it would be medically inadvisable for Doucet to return to his former employment because of an increased risk of reinjury. On September 10, 1990, Dr. Gidman released Doucet to limited work with no repetitive bending or lifting over fifteen pounds. On October 8, 1990, Dr. Gidman concluded that Doucet had reached maximum medical improvement and released him to medium duty work. His limitations included only occasional bending, squatting and climbing stairs with a maximum lifting capacity of 50 pounds occasionally and 25 pounds frequently. These restrictions were maintained because of spondylolisthesis which, in industrial terms, means Doucet has a Class V lumbar spine, the worst functional work capacity rating.
On October 24, 1990, Dr. Gidman narrated a progress report in which he stated, in pertinent part:
It is my feeling that Mr. Doucet can return to moderate type work. He should not return to heavy duty type work because of his spondylolisthesis at L5-S1. He has a grade V (five) spine. I think these restrictions would be placed on him regardless of whether or not he had an injury to his lower back. These restrictions are placed on him because of his spondylolisthesis. (Emphasis ours)
Based mainly upon this report and further documentation supporting the report, Constitution determined that Doucet had returned to his pre-accident condition. It terminated his weekly compensation benefits.
Doucet testified that, when Dr. Gidman released him to medium duty work, he felt that his back condition had not returned to its pre-accident status. He stated that he awakes in the morning with mild back pain approximately five days per week or usually experiences mild back pain during the day. However, the pain is not serious enough even to require mild pain medication such as Aspirin or Ibuprofen. He performs very little or no daily physical activity. Doucet agreed *951 with Dr. Gidman's assessment that he had reached maximum medical improvement. However, he felt that, because of the mild back pain, he was incapable of returning to his former job with Baker Hughes. Doucet sought a medium duty job with Baker Hughes and was told on two separate occasions that no such employment was available. He also sought medium duty work elsewhere and submitted into evidence a list of 159 separate job inquiries he allegedly made from December 17, 1990 through May 31, 1991. His search for a job, as of the date of trial, had proven fruitless.
Dr. Gidman testified that, because of his congenital spondylolisthesis, Doucet is a prime candidate for serious spinal injury if he becomes involved with heavy lifting and repetitive bending. He characterized Doucet's spine as abnormally unstable because of the spondylolisthesis, a condition which will not improve but will worsen with further trauma or natural degeneration. Upon reviewing Doucet's pre-employment x-rays taken on March 7, 1988, Dr. Gidman concluded that the spondylolisthesis and resulting Class V spine existed at that point in time. He opined that Doucet's back straining accident made the preexisting spondylolisthesis symptomatic. Dr. Gidman explained that, with spondylolisthesis, greater physical activity puts Doucet at a higher risk for back pain and could eventually lead to a herniated disc due to his unsound spinal structure. He further stated that Doucet, on his final visit, agreed that he had reached maximum medical improvement. According to Dr. Gidman, Doucet would be best suited for a "desk job" in which his chances of experiencing symptomatic pain would be minimized. He ruled out any heavy manual labor.
Dr. Clifton Shepherd, an orthopedic surgeon, performed an independent medical examination on Doucet at Constitution's request on July 30, 1990. He agreed with Dr. Gidman's diagnosis of spondylolisthesis which, in his opinion, pre-dated the accident. Dr. Shepherd did not detect any spinal muscle spasm. He stated that a person with spondylolisthesis is predisposed to injure his back in a lifting or exertional episode. He testified that his gradation of Doucet's disability would be the same whether or not he experienced pain symptoms.
Don Perez, Constitution's claims representative, testified that the decision to terminate Doucet's benefits was based upon the reports of Drs. Gidman and Shepherd and his further investigation of the medical results. He understood the medical reports to reflect that the medium duty restrictions would have been placed on Doucet solely because of his spondylolisthesis and regardless of his injury. He believed that Dr. Gidman's report meant that Doucet had recovered fully from the April 23, 1990 accident as if his injury had not occurred. Seeking clarification, he wrote Dr. Gidman once and spoke to him twice over the telephone. Perez also stated that, although several of Doucet's weekly compensation payments were late, he was nonetheless given all the benefits that Baker Hughes was obligated to provide under the Worker's Compensation Act.

SEB
In a worker's compensation case, the claimant has the burden of establishing his disability and its causal relationship with the employment accident by a preponderance of the evidence. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985); Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2d Cir.1992). The issue of disability presents a legal, not a purely medical, question which must be determined through a consideration of both lay and medical testimony. Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48 (La. App. 3rd Cir.1992), writ denied, 606 So.2d 541, 542 (La.1992); Pollock v. LIGA, 587 So.2d 823 (La.App. 3rd Cir.1991). The hearing officer's factual determinations with regard to the claimant's disability and entitlement to benefits may not be set aside on appeal in the absence of manifest or clear error, and, where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review. Britton, supra, 604 So.2d at 134 and cases cited therein.
To qualify for SEB, a claimant must initially prove by a preponderance of the evidence that a work-related injury resulted *952 in his inability to earn wages equal to 90% or more of his wages at the time of injury. Kennedy v. Commercial Union Insurance Co., 572 So.2d 319 (La.App. 3rd Cir. 1990). La.R.S. 23:1221(3), which provides for SEB, was explained by the Louisiana Supreme Court in Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989), wherein the court reasoned:
Once the plaintiff has met his initial burden of proving entitlement to supplemental earnings benefits by establishing his job-related disability, the amount of such benefits must be calculated. 23:1221(3)(a) provides that the benefits are "sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn." The next step in the analysis requires an examination of what the employee is earning or is able to earn. The statute further explains this analysis in (3)(c)(i). The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. (footnote omitted) (Emphasis ours)
If the employer meets this burden then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
In the case sub judice, Doucet was performing a heavy labor job with preexisting spondylolisthesis (for which he should have been downgraded to medium labor work) when he injured his back. Simply stated, he was doing work which, at the time, he should not have been doing due to the increased risk of injury by reason of his congenital spondylolisthesis. Prior to the accident, Doucet had a Class V spine. After a five and one-half month recovery period under the care of Dr. Gidman, Doucet had reached maximum medical improvement and was restricted to medium duty work. He still has a Class V spine which results from the spondylolisthesis, the sole reason for his medium duty work restriction. In other words, by October of 1990, Doucet had recovered to his pre-accident status. The medical testimony and evidence is not in conflict insofar as Doucet's back condition, its cause, and the work limitations resulting from his congenital spondylolisthesis. Doucet himself even testified that his residual pain is so mild as to not require even an over-the-counter pain reliever.
Under these circumstances, it is clear that Doucet failed in his initial burden of proving a job-related disability which would establish his prima facie entitlement to SEB. The hearing officer's conclusion to the contrary is manifestly erroneous.
The present case is similar to the recently decided case of Bates v. City of Crowley, 613 So.2d 1107 (La.App. 3rd Cir.1993), writ denied, 619 So.2d 545 (La.1993), which involved a claimant with a Class V spine both prior to and after recovery from his work-related lumbar strain injury. His benefits were terminated by the City's claims representative considering existing medical evidence in conjunction with a videotape of Bates performing heavy manual labor. The hearing officer determined that Bates was entitled to SEB. We reversed adopting the reasoning of our brethren of the First Circuit as follows:
... so long as the employee is disabled from the aggravation of a preexisting defect, he is entitled to compensation. However, where the aggravation ceases and the employee's continued disability, if any, results solely from the preexisting defect, compensation is no longer due.
Bates, supra, at 1112, citing Monistere v. Louisiana Department of Hospitals, 273 So.2d 594 (La.App. 1st Cir.1973).
Clearly, Doucet had a preexisting condition, spondylolisthesis, which was aggravated by his accident. He was entitled to and collected compensation benefits until the aggravation ceased and his residual disability *953 resulted solely from the preexisting spondylolisthesis. Dr. Gidman clearly stated that his medium duty work limitation was the result of the spondylolisthesis without regard to the aggravating injury. Under these circumstances, compensation was no longer due as of the date upon which Doucet reached maximum medical improvement. For these reasons, the award of SEB is reversed.

PENALTIES AND ATTORNEY'S FEES
La.R.S. 23:1201(E) provides for the imposition of a 12% penalty on the employer when compensation benefits are not paid when due unless "... the employee's right to such compensation or medical benefits has been reasonably controverted by the employer or its insurer". Additionally, La.R.S. 23:1201.2 provides for the assessment of reasonable attorney's fees for the discontinuance of benefits which is found to be "... arbitrary, capricious or without probable cause".
In light of the fact that we hold that Doucet was not entitled to compensation benefits after the aggravation of his preexisting condition subsided, we likewise hold that Baker Hughes' termination of benefits in reliance on sound medical evidence was not arbitrary, capricious, or without probable cause. The decision to terminate Doucet's benefits was made over two months after Dr. Gidman determined that he was no longer disabled from the April 23, 1990 injury. Under these circumstances, Baker Hughes reasonably controverted Doucet's entitlement to benefits. Accordingly, we reverse the hearing officer's award of penalties and attorney's fees.

DECREE
For the above and foregoing reasons, the judgment of the OWC is reversed. Costs of this appeal are assessed to plaintiff-appellee, James Doucet.
REVERSED AND RENDERED.
DOMENGEAUX, C.J., concurs in part, dissents in part and assigns reasons.
WOODARD, J., concurs in part and dissents in part for reasons assigned by DOMENGEAUX, C.J.
DOMENGEAUX, Chief Judge, concurs in part and dissents in part.
I agree that the hearing officer's award of penalties and attorney's fees should be reversed. Defendant's termination of benefits in reliance on sound medical evidence was not arbitrary, capricious, or without probable cause.
I disagree, however, with the majority's conclusion that the SEB award of $1,186.80 per month should be reversed.
I conclude that the trial court's award of SEBs should be affirmed. The issue in this case is whether plaintiff's pre-existing, congenital spondylolisthesis, which renders him disabled from heavy work (not because of pain or lack of strength, but because of the structural instability of his back increasing the risk of injury), is compensable when the condition manifested itself after a work-related injury.
The facts are that plaintiff sustained a back injury during the course and scope of his employment as a technical tools specialist. During his treatment, plaintiff was diagnosed with spondylolisthesis. His lower back injury improved and within six to eight months, plaintiff had reached maximum medical improvement. His treating physician, however, would not release him for heavy work because of an increased risk of reinjury due to the spondylolisthesis. Therefore, plaintiff was returned to his pre-injury state, except that he is now classified as disabled. I believe the facts support the award of compensation.
In Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La.App. 2d Cir.1990), the plaintiff was diagnosed with pre-existing interstitial lung disease which manifested itself after an inhalation injury occurred at work. Austin's physician treated him successfully and stabilized his condition, yet he was told not to return to his former employment so as to prevent "any recurrence or worsening of the problem." 569 So.2d at p. 664. The court stated:
In Louisiana, it is well settled that an employee's disability is compensable if a pre-existing condition or disease is activated or precipitated into a disabling manifestation *954 as a result of work. Hammond v. Fidelity and Casualty Co. of New York, 419 So.2d 829 (La.1982); Duncan v. State, DOTD, 556 So.2d 881 (La.App. 2d Cir. 1990).
569 So.2d at p. 664.
In Toth v. Ensco Environmental Services, 546 So.2d 188 (La.App. 1st Cir.), writ granted, reversed in part on other grounds, 551 So.2d 623, writ denied, 551 So.2d 632 (La. 1989), the plaintiff sustained a gunshot wound while at work. He was left with nerve damage as a result of the wound, but additionally, shortly after the accident, the plaintiff developed leg pain and weakness and was diagnosed with spondylolisthesis. The court found that "plaintiff's work-related accident caused, accelerated, aggravated, and/or combined with his pre-existing Class 1 spondylolisthesis to produce his disability." 546 So.2d at p. 195.
See also Hammond, supra, for a discussion of the proposition that "causation is not necessarily and exclusively a medical conclusion," 419 So.2d at p. 833, and Gaspard v. Dresser Industrial Valve, 542 So.2d 177 (La. App. 3d Cir.1989).
Conversely, I take issue with the majority's reliance on Bates v. City of Crowley, 613 So.2d 1107 (La.App. 3d Cir.), writ denied, 619 So.2d 545 (La.1993), a case which involved credibility determinations which are not present in the case before us now.
Accordingly, for the above stated reasons, I respectfully concur in part and dissent in part.